# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TONY VON CARRUTHERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:26-cv-00680** |
| | ) | **Judge Richardson** |
| **FRANK STRADA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO PRESERVE AND PERMIT INSPECTION

---

## INTRODUCTION

Plaintiff Tony Carruthers was scheduled to be executed by lethal injection on May 21, 2026, for the murders of Marcellos Anderson, his mother Delois Anderson, and Freddrick Tucker. After difficulties with a backup IV line, Governor Bill Lee halted the execution and issued a one-year reprieve. That same day, this lawsuit was filed, seeking declaratory and injunctive relief related to the method of Carruthers' yet-to-be-scheduled future execution. An emergency motion accompanied the Complaint. The motion asked the Court to require Defendants to preserve evidence and allow a doctor to examine Carruthers at Riverbend Maximum Security Institution (RMSI).

The motion should be denied because Carruthers has not identified any legal basis for his request. He has not complied with the requirements of the Federal Rules of Civil Procedure governing discovery. Indeed, this action was only filed last week, and discovery requests cannot be served for twenty-one days under Fed. R. Civ. P. 26(d)(2), let alone advanced by motion the same day a lawsuit is filed. Carruthers has not shown good cause to deviate from the Rules, and his requests are duplicative and unnecessary because the Tennessee Department of Correction

1

(TDOC) is already collecting and preserving evidence relevant to the execution attempt, pursuant to an existing preservation order from this Court and TDOC's independent obligation to preserve evidence relevant to this lawsuit. Finally, Carruthers has received a reprieve from execution that will remain in effect for one year. There is no emergency at hand, and he will be able to gather the evidence he seeks in the normal course of discovery without a preservation order.

## BACKGROUND

On May 21, 2026, the TDOC attempted to execute Carruthers. Compl., D.1. The execution was halted, and Governor Bill Lee issued a reprieve from execution that will remain in force until May 21, 2027. Reprieve, attached as Exhibit 1. After the execution was halted, TDOC began collecting and preserving evidence related to the execution attempt. Declaration of Kenneth Nelsen ¶ 8, attached as Exhibit 2. Among other measures, on May 21, 2026, TDOC personnel took photos and video to document Carruthers' physical state following the execution attempt. *Id*. ¶¶ 9-11. These measures were taken, in part, to fulfill Defendants' obligations under an existing preservation order from this Court in *King v. Strada*, No. 3:18-cv-01234 (M.D. Tenn.), and *Middlebrooks v. Strada*, No. 3:19-cv-01139 (M.D. Tenn.). *King/Middlebrooks* Preservation Order, attached as Exhibit 3.

This lawsuit was filed hours after the attempted execution. Compl., D.1. The Complaint alleges that, during the attempt, a physician tried to place a central IV line in Carruthers' chest. *Id*. at 3-4. It alleges that this constituted cruel and unusual punishment prohibited by the Eighth Amendment. *Id*. at 5. Along with the Complaint, an emergency motion was filed that asked the Court to order Defendants, TDOC Commissioner Frank Strada and RMSI Warden Kenneth Nelsen, to allow a doctor and an "additional individual" inside Riverbend to examine Carruthers by 6 p.m. the same day, May 21, 2026. Mot., D.6 at 2-3. The motion also asked the Court to order Defendants to preserve several categories of evidence related to the attempted execution. *Id*.

2

Later in the day, the Court denied the emergency motion in part. Order, D.6. Specifically, the Court denied the request for a physician visit that same day and set a briefing schedule for the remaining issues in the motion. *Id.* Hours after that, attorneys from the Office of the Federal Defender filed a nearly identical motion in Davidson County Chancery Court in *Burns v. Strada*, No. 25-0414-IV. *Burns* Motion, attached as Exhibit 4. Carruthers is not a party in the *Burns* litigation. *Id.* Yet the *Burns* motion also asked for a physician to examine Carruthers at RMSI later the next day, May 22, 2026. *Id.* The motion asked Chancellor Russell Perkins to order TDOC to preserve substantially the same evidence as the evidence described in the motion before this Court. *Id.*

At the request of Federal Defender's Office counsel for the *Burns* plaintiffs, Chancellor Perkins set a hearing for May 22. *Burns* Order Setting Hearing, attached as Exhibit 5. After the hearing, Chancellor Perkins denied the request for a physician visit but orally granted the request for a preservation order in part. Specifically, he ordered Defendants Strada and Nelsen to preserve nearly all of the evidence named in the motion, with the exception of two categories (paragraph c., "biological or chemical residue" and paragraph i., the execution chamber in its exact state following the May 21, 2026 attempt). *See* Proposed Order, D. 3-1.[1]

## ARGUMENT

**I.      Discovery Has Not Commenced, and Carruthers Has Not Articulated a Legal Basis for Bypassing the Federal Rules.**

The Court should deny all requests for relief because Carruthers has not complied with the Federal Rules governing discovery and has not shown good cause for deviating from those Rules. Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Rule 34 requests may not be served earlier than "21

---

[1] The *Burns* preservation order has not yet been entered.

days after the summons and complaint are served." Fed. R. Civ. P. 26(d)(2). This lawsuit is not exempt from these rules. *See* Fed. R. Civ. P. 26(a)(1)(B). The parties have not conferred under Rule 26(f), so discovery requests are not yet permitted, and this motion should be denied. *See Whorton v. Cognitians*, LLC, 358 F.Supp.3d 712, 713 (S.D. Ohio 2019).

This Court does have discretion to allow expedited discovery if Carruthers can show "good cause." *SB Initiative, Inc. v. Cheekwood Botanical Garden and Museum of Art*, No. 3:24-CV-00821, 2024 WL 7001973, at *2 (M.D. Tenn. Sept. 18, 2024). This issue comes up most frequently "in cases alleging infringement, unfair competition, or where evidence may be lost or destroyed with time." *Id*. (citation omitted). Carruthers can meet the good-cause standard "when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward." *North Atlantic Operating Co., Inc. v. JingJing Huang*, 194 F.Supp.3d 634, 637 (E.D. Mich. 2016).

None of those factors are present. Most relevant here, expedited discovery is not necessary to move this case forward or preserve fragile evidence because Carruthers is already receiving medical care from TDOC, and his physical condition has been documented with photos and videos. Nelsen Decl. §§ 9-11, Ex. 2. TDOC has also collected other evidence relevant to the attempted execution, as it was obligated to do under this Court's preservation order from the *King* and *Middlebrooks* cases. *Id*. An attorney witness was present with Carruthers in the execution chamber and described what she saw to Carruthers' counsel. Harwell Decl., D.3 §§ 3-4, 6-8. Carruthers may well *prefer* that his own personal physician pay him a visit so that he can bolster his case, but that is not the same as showing good cause for expedited discovery just days after a lawsuit is filed.

At the end of the day, Caruthers' physical condition has been documented, and Defendants are preserving relevant evidence. The Court should therefore deny the motion and allow this case to proceed on a normal schedule.

**II.      Carruthers Is Not Entitled to Relief Because He Has Not Served a Rule 34 Request, and He Has Not Shown Good Cause for a Rule 35 Examination.**

The motion asks this Court, under Rules 34 and 35, to allow a doctor to enter RMSI and to examine him. Both Rules contain procedural requirements that have not been met. This Court cannot overlook these failures, for these requirements constitute not "mere formalit[ies]" but "plainly expressed limitation[s]." *Schlangenhauf v. Holder*, 379 U.S. 104, 118 (1964). These Rules also require "a greater showing of need" than other discovery rules require. *Id*. (quoting *Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962)).

*Request to enter*. A Rule 34 request to enter and inspect must: (1) describe with reasonable particularity each item or category of items to be inspected, (2) specify a reasonable time, place, and manner for the inspection and for performing the related acts, and (3) comport with Rule 26(b). Fed. R. Civ. P. 26, 34. Additionally, Rule 26(d)(1) prohibits parties from seeking discovery from "any" source before conferring according to Rule 26(f).

The motion fails these three procedural requirements. First, it fails to describe an item or category of items to be inspected. The motion asks the "Court to enter an emergency order requiring Defendants to immediately permit access to, and *inspection of, Mr. Carruthers . . . .*" (emphasis added). Mot., D.6 at 1. Carruthers is not an item; he is a person. Rule 34 applies to inspection of "designated documents or electronically stored information" and "designated tangible things" and "property or any designated object or operation on it." Carruthers is none of these.

Second, the motion has not specified a reasonable time for the inspection. It asks the Court to order Defendants to arrange for a doctor, an unspecified "additional" person, and "all necessary

5

medical equipment" to enter Tennessee's most secure prison to meet with an inmate in restrictive confinement. Mot., D.6 at 2-3. It is difficult to imagine a more burdensome request. Moreover, it is not clear if Carruthers is even aware of this request, or what would happen if he refuses the visit. Would Defendants be obligated to use force? If so, how much? And would that force risk exacerbating any injuries he may have?

Finally, the parties have not had a Rule 26(f) conference. Except when authorized by court order, the rules, stipulation, or in cases exempt from initial disclosures, parties cannot seek discovery before they confer. Fed. R. Civ. P. 26(d)(1). Because the parties have neither stipulated nor conferred, and because no court order has been entered allowing discovery before the Rule 26(f) conference, discovery is not yet open. The request constitutes an attempt to get early discovery, but Rules 34 and 35 cannot be used to circumvent Rule 26(f). Until this Court opens discovery, this request is not ripe.

*Request to examine*. A court may order a party who has custody or legal control of a person to produce the person for an examination. Fed. R. Civ. P. 35(a). The moving party must show two things: (1) that good cause supports the motion, and (2) that the examinee's mental or physical condition is in controversy. *Id*. Conclusory allegations about relevance or necessity will not do; only an "affirmative showing by the movant that each condition as to which the examination is sought is *really and genuinely* in controversy and that good cause exists for ordering each particular examination" will suffice. *Johnson v. Peake*, 273 F.R.D. 411, 412 (W.D. Tenn. 2009) (quoting *Schlagenhauf*, 379 U.S. at 118) (emphasis added). When evaluating the good cause requirement, "the Court may consider whether there exist less intrusive means of evaluating the condition at issue, such as by reference to already existing medical records." *Id.* at 413.

The motion fails to show good cause or a genuine controversy.

6

*First*, it cannot show that good cause supports his motion. As explained above, there is no risk of evidence destruction because Defendants are already under a comprehensive preservation order that encompasses the execution attempt on May 21, 2026. And TDOC has already taken steps to comply with that order by preserving evidence and documenting Carruthers' physical state after the execution attempt. Nelsen Decl., ¶¶ 8-11, Ex. 2. Thus, an examination of Carruthers is simply not necessary because his physical condition has been documented through less intrusive means, and Defendants are obligated to preserve any related medical records.

*Second*, the motion does not allege a mental or physical condition that is "really and genuinely in controversy." *Johnson*, 273 F.R.D. at 412. It asks this Court to order an examination without giving any reasons other than that Carruthers survived an attempted execution and that "counsel have a reasonable expectation that relevant evidence will be preserved." Mot., D.4 at 1-2. These statements do not assert, much less make an affirmative showing, that any mental or physical condition is in controversy.

And no one could seriously dispute that needles for IV lines were placed in Carruthers' veins. Those needles presumably left traces, which have been documented. Nelsen Decl. ¶¶ 9-11, Ex. 2. Defendants have taken reasonable steps to preserve evidence after the attempted execution. These actions demonstrate that the parties *agree* on Carruthers' condition and Defendants' preservation obligations. No actual controversy exists as to any specific mental or physical condition.

Furthermore, the motion constitutes an attempt to get early discovery outside the normal bounds of litigation. In a typical Rule 35 motion, a need for examination arises due to factual disputes. *See Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 838 (6th Cir. 2019) ("There is no dispute that [Plaintiff's] physical condition was in controversy. Both the extent and cause of his injuries were contested and central to his claim[.]").

Factual disputes develop during discovery. But here, the motion has not staked out a genuine discovery dispute that warrants an examination. As the parties get into discovery over the coming months, a controversy over a physical condition *may* emerge. But as of now, an examination request is premature and unnecessary. No discovery disputes have arisen because discovery has not opened and will not open until the Rule 26(f) conference occurs. *See* Fed. R. Civ. P. 26(d)(1). The proper procedure is to file a Rule 35 motion *after* discovery opens and key factual disputes develop. *See id*. Here, the motion seeks to circumvent normal discovery procedure by asking this Court to order discovery *before* the requisite controversy surfaces. That is an improper request, and the motion should be denied.

## III. The Evidence Carruthers Seeks Is Not Proportional to the Needs of the Case and Is Duplicative and Obtainable from Less Burdensome Sources.

Even if Carruthers had properly served a Rule 34 request, his motion still fails on the merits because it targets evidence that is already being preserved. Rule 26 governs the scope of discovery, including requests for "entry onto designated land or other property" under Rule 34 and requests for examination under Rue 35. Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). But the Court shall limit discovery "if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

The motion asserts that Carruthers, an inmate in a maximum-security prison, is entitled to his own personal physician visit—as well as a court order mandating preservation of evidence—in a case that was filed just days ago. Mot. at 2-3. It does not explain the legal basis for this request under Rules 34 or 35. Nor does it explain what evidence the physician would collect, or why collecting that evidence is proportional to the needs of the case. In fact, Carruthers is already

receiving medical care from TDOC, and his physical condition has been documented with photos and videos. Nelsen Decl. §§ 9-11, Ex. 2. Thus, the discovery sought can be obtained from a less burdensome source.

More information about Carruthers' condition can be sought in discovery through properly-served Rule 34 requests for production and other means. Presumably, discovery will yield Carruthers' own testimony and the testimony of other witnesses, including an attorney witness to the execution attempt. *See* Harwell Decl., D.3 §§ 3-4, 6-8. These open avenues show that this emergency request is unnecessary.

## IV. The Court Should Deny the Duplicative and Unnecessary Request for a Preservation Order.

A preservation order is not necessary. Defendants are already obligated to preserve a broad swathe of evidence related to executions under a preservation order from this Court, and they must comply with their obligations under that order as well as the Federal Rules of Civil Procedure and governing precedent.

Parties have a duty to preserve evidence when they know or "should have known that the evidence may be relevant to future litigation." *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (quotation marks and citation omitted). They also have a duty to obey court orders on pain of sanctions including contempt, default, or dismissal. *See* Fed. R. Civ. P. 37(b)(2)(c), 41(b).

Accordingly, "preservation orders are unnecessary because parties to civil litigation have a duty to preserve relevant information." *Lett v. United Ass'n of Plumbers & Steamfitters*, No. 2:26-CV-4, 2026 WL 91511, at *2 (S.D. Ohio Jan. 13, 2026) (citation and quotation marks omitted). The Sixth Circuit uses three requirements from the Sedona Principles to evaluate requests for such orders: the requesting party "must" demonstrate (1) "a real danger of evidence destruction exists," (2) "a lack of any other available remedy," and (3) "the preservation order is an appropriate exercise of the

court's discretion." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citing The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, Second Edition 11, 33 (The Sedona Conference Working Group Series, 2007)).

The key question is "whether the requested preservation order is overbroad and/or unduly burdensome." *Hogue v. Am. Paper Optics, LLC*, No. 217CV02670MSNDKV, 2019 WL 1318559, at *3 (W.D. Tenn. Jan. 14, 2019) (citation omitted). Behind that question looms a commonsense background principle: "If a formal motion were required in every case to reaffirm the parties' pre-existing preservation obligations, the Court's docket would be hopelessly clogged by pointless motion after pointless motion." *Reinsdorf v. Acad., Ltd.*, No. 3:13-0269, 2013 WL 3475183, at *3 (M.D. Tenn. July 10, 2013). Thus, if "[a] court order would add nothing to the duties that the litigants already have to preserve evidence," then the motion for a preservation order should be denied. *Hogue*, 2019 WL 1318559, at *3 (citation omitted).

The motion has not met any of the three requirements for a preservation order. *John B.*, 531 F.3d at 459. *First*, it has not shown a real danger that relevant information will be destroyed. That is primarily because Defendants must follow the Court's preservation order from *King/Middlebrooks,* which has a broad sweep indeed. The order, which is to be "construed broadly[,]" requires Defendants to preserve:

> . . . evidence stored in any format, including but not limited to paper, physical, electronic, digital, analog, video, or photographic, that may be relevant to this litigation as currently pled, or that may be relevant to future litigation regarding Tennessee's protocols, procedures and processes for executing persons sentenced to death . . .
>
> Defendants shall preserve evidence that they believe is not subject to disclosure due to privilege or other protection . . .
>
> Defendants shall preserve all evidence that was generated, received, and/or maintained by former employees of Defendants.

*King/Middlebrooks* Preservation Order, Ex. 3.

The first paragraph in particular, construed broadly, encompasses evidence "in any format" of the execution attempt on May 21, 2026. This lawsuit is undoubtedly an example of the "future litigation" contemplated in the order dealing with "Tennessee's protocols, procedures, and processes" for executions. *See* Compl., D.1 ¶¶ 7-8, 14, 16 (describing current lethal injection protocol provisions and basing the sole claim for relief on the application of the protocol to Carruthers).

By contrast, while the requests in this case delve into details such as "gurney components" and "stains," Proposed Order, D.3-1, they do not encompass evidence that may be privileged or protected, and they do not seek any evidence generated by former employees of TDOC. Nor do they encompass evidence of past or future executions under TDOC's lethal injection protocol. Thus, Defendants are already under an obligation to preserve evidence that is broader than anything the motion envisions. And that obligation is layered on top of the duty to preserve evidence relevant to *any* litigation against TDOC, including this case. *See Beaven*, 622 F.3d at 553. To fulfil these obligations, TDOC started collecting and preserving evidence immediately after the execution attempt on May 21, 2026. Nelsen Decl. ¶ 8, Ex. 2. That includes photo and video evidence of Carruthers' physical state soon after the execution attempt. *Id.* ¶¶ 9-11. In light of these obligations and developments, there is little risk that evidence will be destroyed.

*Second*, the motion has not argued the "lack of any other available remedy." *John B.*, 531 F.3d at 459; *cf. Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.,* No. 2:16-CV-236, 2016 WL 1657922, at *2-3 (S.D. Ohio Apr. 27, 2016) (finding a preservation order was warranted against a non-party because, without the order, the non-party's retention policies would have let evidence be destroyed). Defendants have a general obligation to preserve evidence during litigation, and a preservation order is already in place in *King/Middlebrooks*. Thus, a preservation remedy was in place years before this case was filed. The motion cannot meet this factor either.

*Third*, and for these same reasons, there is no showing that the requested preservation order would be "an appropriate exercise of the court's discretion." *John B.*, 531 F.3d at 459. The requested order reiterates the preservation duty Defendants already have, just with unnecessary detail. The Court should therefore decline to enter a duplicative and "pointless" preservation order. *Reinsdorf*, 2013 WL 3475183, at *3.

## CONCLUSION

The motion should be denied. Defendants are already preserving a broader sweep of evidence than the motion asks for, which renders a preservation order superfluous, and the motion has not shown any legal basis for a handpicked physician visit.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *John W. Ayers*
JOHN W. AYERS (BPR# 037494)
Assistant Attorney General
Law Enforcement and
Special Prosecutions Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-3491
will.ayers@ag.tn.gov
*Counsel for Defendants*