IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TONY VON CARRUTHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:26-cv-00680 |
| | ) | Judge Richardson |
| FRANK STRADA, in his official | ) | Magistrate Judge Evans |
| capacity as Tennessee's | ) | |
| Commissioner of Correction, and | ) | **CAPITAL CASE** |
| | ) | |
| KENNETH NELSEN, Warden, | ) | |
| Riverbend Maximum Security | ) | |
| Institution, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO PRESERVE AND PERMIT INSPECTION

Tony Von Carruthers initiated this suit and filed the present motion[1] in the immediate frenzy of events arising from the Defendants' ultimately aborted attempt to execute him on May 21, 2026. (Doc. No. 1; Doc No. 3.) While the Governor's reprieve

---

[1] The motion requests, among other things, that TDOC be required to preserve "[t]he complete execution chamber and all associated areas in their current condition, including any physical layout, equipment placement, stains, residue, markings, or alterations." (Doc. No. 3 at 3.) Mr. Carruthers recognizes that, in light of the time that has elapsed, such preservation is likely no longer possible. Mr. Carruthers therefore withdraws that portion of his request. Mr. Carruthers also clarifies that his request that his designated physician be accompanied by an "additional individual" was intended to permit an investigator to accompany the physician to assist with photography. (*Id.* at 2.) While Mr. Carruthers continues to believe that such accompaniment would be helpful, he does not object to the Court's denial of that portion of his request insofar as the Court determines that such denial is necessary to comply with Fed. R. Civ. P. 35.

1

suspended the execution efforts, it did not resolve this lawsuit or Mr. Carruthers's motion seeking to document the harm Mr. Carruthers suffered and to preserve evidence from the State's aborted efforts to carry out his execution. With the risk of immediate execution having passed, Mr. Carruthers has begun the process of evaluating the avenues for recourse available to him to vindicate his rights relating to the injuries that were, when he filed, only beginning to come to light. Nevertheless, there remain two urgent issues that only this Court can and should address on an expedited basis: the need for Mr. Carruthers to be examined by a physician who is not employed by or otherwise beholden to Defendants before the evidence of his wounds disappears; and the need to ensure that TDOC preserves all relevant evidence. Because Mr. Carruthers' pending claim and the surrounding circumstances warrant such relief, that relief should be granted.

## I.    Mr. Carruthers's emergency motion is not governed by Fed. R. Civ. P. 26.

Respondent contends that Mr. Carruthers's emergency motion should be denied because Mr. Carruthers "has not complied with the Federal Rules governing discovery and has not shown good cause for deviating from those Rules," specifically noting that the parties have not conferred under Rule 26(f) and that Rule 34 requests may not be served sooner than "21 days after the summons and complaint are served." (Doc. No. 10 at 3.) Mr. Carruthers's emergency motion, however, does not seek adversarial, party-to-party discovery of the sort contemplated by Rule 26(f), insofar as it seeks "discovery" at all.

Mr. Carruthers's request for an order requiring the State to preserve evidence from its failed execution attempt, for example, does not assert an ultimate right to discover any specific evidence. What evidence Mr. Carruthers will be able to seek through discovery of the evidence in the future pursuant to the Rules of Civil Procedure is a separate issue from whether the Defendants should be required to make sure that all the evidence of its failed execution attempt (including materials used, written, audiotaped or videotaped evidence of what happened, etc.) is preserved and available in the future for discovery under the rules.

Mr. Carruthers's access request, likewise, is not adversarial discovery of the sort contemplated by Rule 26(f). Mr. Carruthers is not seeking information about his condition from the defendants, nor is he asserting a right to propound mandatory discovery requests absent prior review of the Court. Rather, Mr. Carruthers seeks access so that an appropriately qualified medical professional and an assistant may examine Mr. Carruthers's *own body*, to ensure that the full scope of his injuries is documented before his injuries disappear through the healing process. The typical civil litigant does not need the court's assistance in obtaining a physical evaluation because they can exercise control over their own body and can see a medical professional of their choosing at a time of their choosing. It is only Mr. Carruthers's imprisonment that prevents him from taking steps for a physical examination to memorialize the injuries he suffered during the defendants' botched execution attempt without this Court's assistance.

3

Because the discovery rules have no bearing on these requests, Mr. Carruthers respectfully asks that this Court exercise its inherent authority to issue the requested order for preservation and access.

## II. Insofar as Rule 26(f) applies, it does not prevent the Court from ordering preservation of evidence or a Rule 35 examination.

Even if Rule 26 applies here, the rule provides flexibility to this Court sufficient to grant the requested relief. Rule 26(f) requires that, "[e]xcept in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) *or when the court orders otherwise*, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f) (emphasis added). On its face, the Rule recognizes the authority of a district court to tailor the Rule's requirements to the needs of each particular case.

Counsel for Mr. Carruthers have been attempting to work with Defendants to ensure an adequate medical examination of Mr. Carruthers since the events giving rise to this case occurred, including by providing the requests encompassed by the pending motion in writing. *See* Ex. 1. Defendants nevertheless assert that "[t]he parties have not conferred under Rule 26(f), so discovery requests are not yet permitted." (Doc. No. 10 at 4.) The parties, however, have fully discussed these issues, attempted to resolve them, and reached an impasse. Insofar as that process was procedurally deficient, those deficiencies are of exactly the sort that the Court can and should disregard in light of the fast-moving, urgent nature of the underlying events and requests.

4

Defendants concede that the Court can grant early discovery for "good cause," including, specifically "where evidence may be lost or destroyed with time." (Doc. No. 10 at 4 (quoting *SB Initiative, Inc. v. Cheekwood Botanical Garden and Museum of Art*, No. 3:24-CV00821, 2024 WL 7001973, at \*2 (M.D. Tenn. Sept. 18, 2024))). Such good cause exists here for the reasons set out herein. Mr. Carruthers has endured recent injuries that an ordinary plaintiff would be able to have documented by a physician of his choice, but Mr. Carruthers's incarceration has granted the agency responsible for those injuries an effective veto power over his attempts to do so, while also allowing that agency to provide opaque assurances, at best, regarding the preservation of evidence.

### III. The Court should order Defendants to preserve the evidence that Mr. Carruthers has requested to be preserved.

"Courts may order a party to preserve evidence through its equity powers and its power to control the discovery process and duty of overall case management." *Washington v. City of Detroit*, No. 05-CV-72433, 2007 WL 788909 (S.D. Mich. Mar. 14, 2007), at \*1; *see also Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 402 (W.D. Tenn. 2011) (noting the courts' "inherent authority to control the judicial process"). While that inherent authority permits a district court to impose sanctions after spoliation occurs, it also permits a court to act prophylactically where a "real danger of evidence destruction exists." *John B.*, 531 F.3d at 459 (6th Cir. 2008) (citing *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* 33 (2d ed.)). Although the Sixth Circuit has not specifically identified a mandatory test governing all requests for

5

preservation orders, it has favorably cited a test focused on whether "a real danger of evidence destruction exists," whether there is "a lack of any other available remedy," and whether the order would be an "appropriate exercise of the court's discretion." *John B.,* 531 F.3d at 459. While other courts have used slightly different tests, those tests have typically converged on the same general set of issues—that is, whether the order is necessary and whether it would be unduly burdensome. *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, No. 2:16-CV-236, 2016 WL 1657922, at *2 (S.D. Ohio Apr. 27, 2016). Those factors strongly support the relief Mr. Carruthers seeks.

Defendants' agency, the Tennessee Department of Correction ("TDOC"), is a large entity with a professional workforce that is a frequent litigant in both state and federal courts. Indeed, it is already subject to other preservation obligations relating to executions in ongoing litigation, as it has acknowledged in its briefing. It should face no meaningful hardship from ensuring that the information sought is preserved for Mr. Carruthers. The minor step of simply adding a few additional items to Defendants' ostensibly robust preservation efforts would be easily accomplished— and certainly not out of proportion to the legitimate needs of this litigation.

The harm to Mr. Carruthers if evidence is lost, by contrast, is likely to be severe, irreparable, and not addressable by other means. The secrecy surrounding the execution process means that physical evidence regarding what occurred on May 21, 2026, is likely to have particular relevance—for example, because discarded needles will be evidence of how many failed catheterization attempts occurred and

6

because soiled blankets or clothing may indicate the amount of bleeding that Mr. Carruthers experienced. A general threat of later sanctions for spoliation—as exists in every case—is not a substitute for the information likely to be lost.

The Court, moreover, has legitimate reason to doubt whether evidence will be effectively preserved in the absence of an order. Defendants' stonewalling of Mr. Carruthers in terms of providing any actual details regarding what has been preserved or discarded—as well as their refusal to allow Mr. Carruthers to see a physician not beholden to TDOC—raise serious questions regarding Defendants' preservation efforts. More mundanely, but no less importantly, the complex, fast-paced and demanding nature of prison operations, and the large number of staff potentially involved, provide real risks of inadvertent or reckless spoliation that could be mitigated by an express order.

Mr. Carruthers's need for a preservation order is not eliminated by the fact that other preservation obligations, including the *King/Middlebrooks* preservation order, are in place and partially overlap with his request. While Mr. Carruthers does not dispute that other plaintiffs have legitimate preservation expectations relating to the evidence of his ordeal, the fact remains that only Mr. Carruthers's injuries are his own, and his claims relating to them are qualitatively different than those at issue in any other plaintiff's case. Mr. Carruthers, moreover, cannot simply assume that those protective orders will remain in place and unaltered, even if they do, at present, partially overlap with his request. In any event, Mr. Carruthers's request encompasses physical evidence, such as blood-stained items, that Defendants have

7

neither acknowledged nor demonstrated to be subject to the preservation order in *King/Middlebrooks*, which mentions physical evidence only in passing and provides no clear guidance regarding what physical evidence must be retained. (*See* Doc. No. 10-3 ¶ 2.)

## IV. The Court should order Defendants to facilitate an examination by a physician of Mr. Carruthers's choice.

"A court 'may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.'" *Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 838 (6th Cir. 2019) (quoting Fed. R. Civ. P. 35(a)(1)). The Complaint includes specific assertions about Mr. Carruthers's physical condition—specifically, that he was subjected to a failed "attempt[] to establish a central IV line in [his] chest—most likely in his subclavian vein." (Doc. No. 1 § 12.) The Declaration of Amy Harwell asserts that, based on information available to Ms. Harwell, it appears that Mr. Carruthers's wounds resulted in "pain" and "lots of blood." (Doc. No. 1-3 ¶ 7.) The nature and extent of Mr. Carruthers's injuries are, moreover, inherent to his claims, which appear to be contested. The fact that Defendants broadly concede that some attempted intravenous catheterization occurred does not change the fact that the nature and extent of Mr. Carruthers's injuries are in genuine controversy.

There is also good cause to order examination. Mr. Carruthers attaches a Declaration by Dr. Mark J.S. Heath, an anesthesiologist practicing full time at Columbia University who has performed in-person medical examinations of five prisoners who survived lethal injection execution attempts because of inability to

secure intravenous access. Ex 2 ¶ 3. As Dr. Heath explains, "[t]he injuries caused by IV access attempts display a dynamic healing pattern and it is important that the physical examination be accomplished as soon as possible." *Id.* ¶ 4. Defendants' speculation that Mr. Carruthers is unaware of this request on his behalf is baseless. *See* Ex. 3 ¶ 5.

The fact that TDOC's own onsite physicians have allegedly examined Mr. Carruthers is not a sufficient substitute. TDOC's physicians are, to the knowledge of Mr. Carruthers' counsel, largely or entirely employed by Centurion, a large, for-profit company with a well-established history of relying on TDOC for millions of dollars of contracts. *See, e.g.*, Travis Loller, *Tennessee to rebid $123M contract amid rigging accusations*, Associated Press (May 10, 2021), at https://apnews.com/article/tn-state-wire-tennessee-d5c2db981cba5bb690f801df138a568f. Mr. Carruthers's disputed injuries should be reviewed, as soon as reasonably possible, by a physician who is not financially beholden to the entity that inflicted them. Moreover, as the attached Declaration of Dr. Sina Khoshbin explains, Mr. Carruthers needs more than simply a physical examination but also X-ray imaging to assess internal damage. *See* Ex. 4 ¶¶ 5–8.

The supposed procedural defects of Mr. Carruthers's motion identified by Defendants provide no basis for denial. Defendants claim that Mr. Carruthers failed to identify a "reasonable" time for his requested examination, but his motion clearly sought the examination "no later than 6 p.m. May 21, 2026, unless by agreement of the parties." (*See* Doc. No. 3 at 1.) The fact that the Court denied that aspect of Mr.

9

Carruthers's request does not change the fact that, as a procedural matter, an express time was included on the fact of the motion.

The idea that there is some kind of "defect" arising out of the fact that "[Mr.] Carruthers is not an item" (Doc. No. 10 at 5) and therefore cannot satisfy Rule 34 is nonsensical on its face. At most, that is an argument that Rule 34 and its procedural requirements simply do not apply to Mr. Carruthers's request at all, because Mr. Carruthers is not seeking to inspect "property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2).

While Mr. Carruthers's counsel were unable to schedule what defendants would consider a sufficiently formal Rule 26(f) discovery conference *during the chaos of his aborted execution*, his counsel have been in repeated communication with counsel for the Defendants on related issues in the days since. The parties have expressed their respective positions to each other openly and repeatedly. If the Court concludes that it is nevertheless necessary to hold a formal albeit emergency conference to ensure that the rules are honored, Mr. Carruthers's counsel will happily comply. That process, however, should not interfere with Mr. Carruthers's ability to obtain evidence expeditiously.

A Rule 35 order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). Mr. Carruthers has confirmed that Dr. Jacob Hathaway is willing and available to perform the examination. *See* Ex. 5. Mr. Carruthers is amenable to an examination being performed either at Riverbend Maximum Security Institution or

10

at an outside hospital, and his only scheduling preference is that the examination be performed expeditiously, before evidence of his injuries further dissipates.

## V.      Conclusion

Mr. Carruthers recognizes the numerous serious issues that surround execution-related litigation and the government's asserted interest in the confidentiality of execution-related information. The present motion, however, does not ask the Court to prejudge any issues of ultimate relevance, discoverability, admissibility, or the confidentiality of specific evidence, nor does it call on the Court to prematurely assess the viability of Mr. Carruthers's claims. Mr. Carruthers seeks only what every civil plaintiff has an ordinary right to expect: that evidence potentially relevant to his claims will not be destroyed; and that he be able to document his injuries with the assistance of a physician who is not directly beholden to the individuals whom he has sued for inflicting those injuries in the first place. For the above reasons, Mr. Carruthers asks that the Court grant the requested relief.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER FOR
THE MIDDLE DISTRICT OF
TENNESSEE
CAPITAL HABEAS UNIT


AMY D. HARWELL
First Assistant Federal Public Defender
Acting Chief, Capital Habeas Unit

Marshall A. Jensen
Samantha N. Barry

11

Elijah W. Swiney
Drew S. Brazer
Kit Thomas
Katherine Dix
Asst. Federal Public Defenders

164 Rosa L. Parks Blvd
Nashville, TN 37203
Phone:  (615) 736-5047
Fax:      (615) 736-5265
Email:   Amy_Harwell@fd.org

BY: */s/ Amy D. Harwell*

## CERTIFICATE OF SERVICE

I, Amy D. Harwell, certify that on May 27th, 2026, a true and correct copy of the foregoing was served via the court's electronic filing system to opposing counsel, Will Ayers, Assistant Attorney General.

*/s/ Amy D. Harwell*

12